LITTLE FAWN BOLAND (CA BAR #240181)
CEIBA LEGAL, PC
35 Miller Ave., #143
Mill Valley, California 94943
Ph: (415) 939-7797
Em: littlefawn@ceibalegal.com

VANYA S. HOGEN (admitted *pro hac vice*)
LEAH K. JURSS (admitted *pro hac vice*)
SAMANTHA T. HERMSEN (admitted *pro hac vice*)
HOGEN ADAMS PLLC
1935 W. County Rd. B2 West, Ste. 460
Saint Paul, Minnesota 55113
Ph: (651) 842-9100
Em: vhogen@hogenadams.com
    ljurss@hogenadams.com
    shermsen@hogenadams.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| BUENA VISTA RANCHERIA OF ME-WUK INDIANS, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>Rhonda Morningstar Pope Flores, Pati Gonsalves, Ron Piña, Little Big Time Child Development Center, and Grand Prince Odeum LLC,<br><br>Defendants. | Case No. 2:24-CV-01853<br><br>**Defendants' Brief in Support of Motion to Dismiss**<br><br>Date: December 19, 2024<br>Time: 1:30 p.m.<br>Courtroom: Courtroom 10, 13th Floor<br>Hon. Daniel J. Calabretta |

# Table of Contents

Table of Authorities...................................................................................................iii

Introduction....................................................................................................................1

Background .....................................................................................................................1

Legal Standards .............................................................................................................3

Argument ........................................................................................................................5

I.    The Court should dismiss Count I of the Complaint because Plaintiff has failed to meet both the general and specific pleading standards required for a violation of 18 U.S.C. § 1961. ........................................5

    A.    Plaintiff has failed to plausibly allege the existence and conduct of a RICO enterprise. ....................................................6

    B.    Plaintiff has failed to plausibly allege a pattern of racketeering activity through the commission of predicate acts. ....................................9

II.    The Court should dismiss Count II of the Complaint because Plaintiff has failed to adequately plead a conspiracy as required by 18 U.S.C. § 1962(d)...........................................................................16

III.    Plaintiff's Non-RICO claims must be dismissed or stayed. .................................20

    A.    Plaintiff's conversion claim does not share a common nucleus of operative fact with the RICO claims, so the Court independently lacks jurisdiction over it. ....................................20

    B.    Even if the Court had supplemental jurisdiction over all of Plaintiff's non-RICO claims, the Court should decline to exercise supplemental jurisdiction over those claims because the Plaintiff has failed to state a RICO claim. ..........................................21

IV.    In the alternative, portions of Count I and all of Count V must be stayed pending arbitration. ..................................................22

Conclusion......................................................................................................................24

**Table of Authorities**

**Cases**

*Allwaste, Inc. v. Hecht*,
    65 F.3d 1523 (9th Cir. 1995) ................................................................. 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................. 5, 18, 19

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983). ................................................................. 5, 17

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ................................................................. 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................. 3, 5

*Boyle v. United States*,
    556 U.S. 938 (2009) ................................................................. 6, 7, 8

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) ................................................................. 21

*Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*,
    235 F. Supp. 3d 1132 (E.D. Cal. 2017) ................................................................. 6, 8

*Digital Control Inc. v. Radiodetection Corp.*,
    294 F. Supp. 2d 1199 (W.D. Wash. 2003) ................................................................. 22

*Doan v. Singh*,
    617 Fed. App'x 684 (9th Cir. 2015) ................................................................. 8

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ................................................................. 10

*Eshagh v. Terminix Int'l Co.*,
    No. 11-CV-0222, 2012 WL 1669416 (E.D. Cal. May 11, 2012)................................................................. 22

*Evans v. United States*,
    504 U.S. 255 (1992) ................................................................. 14

*Fent v. Okla. Water Res. Bd.*,
    235 F.3d 553 (10th Cir. 2000) ................................................................. 21

*Fraser v. Team Health Holdings, Inc.,*
   No. 20-cv-04600-JSW, 2022 WL 971579 (N.D. Cal. Mar. 31, 2022)......................8

*Grimmet v. Brown,*
   75 F.3d 506 (9th Cir. 1996) .................................................................6

*H.J. Inc. v. Nw. Bell Tel. Co.,*
   492 U.S. 229 (1989) .........................................................................15

*Highway Equip. Co. v. Feco, Ltd.,*
   469 F.3d 1027 (Fed. Cir. 2006) ...........................................................20

*Hishon v. King & Spalding,*
   467 U.S. 69 (1984) ............................................................................5

*Howard v. Am. Online Inc.,*
   208 F.3d 741 (9th Cir. 2000) .........................................................15, 16

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
   *Sales Practices & Prod. Liab. Litig.,*
   826 F. Supp. 2d 1180 (C.D. Cal. 2011) ..............................................4, 11

*LaComba v. Eagle Home Loans and Inv., LLC,*
   No. 2:23-cv-00370-KJM-DB, Dkt. 49 (E.D. Cal. Feb. 5, 2024) ..........................9

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,*
   940 F.2d 397 (9th Cir. 1991) ...........................................................4, 10

*Lyndonville Savings Bank v. Lussier,*
   211 F.3d 697 (2d Cir. 2000) ...............................................................20

*Moore v. Kayport Package Express,*
   885 F.2d 531 (9th Cir. 1989) ..............................................................10

*Musick v. Burke,*
   913 F.2d 1390 (9th Cir. 1990) ..............................................................8

*N. Star Int'l v. Ariz Corp. Comm'n.,*
   720 F.2d 578 (9th Cir. 1983) ................................................................5

*Neubronner v. Milken,*
   6 F.3d 666 (9th Cir. 1993) ..................................................................4

*Ocasio v. United States,*

578 U.S. 282 (2016) ............................................................... 14

*Oki Semiconductor Co. v. Wells Fargo Bank*,
    298 F.3d 768, 775 (9th Cir. 2002) ........................................ 17

*Pac. Steel Grp. v. Comm. Metals. Co.*,
    600 F. Supp. 3d 1056 (N.D. Cal. 2022) ................................. 20

*Pfau v. Mortenson*,
    858 F. Supp. 2d 1150, 1157 (D. Mont. 2012) ...................... 11

*Rothman v. Vedder Park Mgmt.*,
    912 F.2d 315 (9th Cir. 1990) ............................................... 12

*Salinas v. United States*,
    522 U.S. 52 1997) ............................................................... 19

*Schreiber Dist. Co. v. Serv-Wel Furniture Co., Inc.*,
    806 F.2d 1393 (9th Cir. 1986) ............................................. 11

*Slade v. Gates,*
    No. 01-8244-RMT, 2002 WL 31357043 (C.D. Cal. Oct. 2, 2002) ......................... 13

*Strojik v. Bakersfield Convention Hotel I, LLC*,
    436 F. Supp. 3d 1332 (E.D. Cal. 2020) ................................ 21

*U.S. ex rel. Chunie v. Ringrose,*
    788 F.2d 638 n.2 (1986) ....................................................... 5

*United Bhd. of Carpenters and Joiners of Am. v. Bldg. and Constr. Trades Dept.*,
    770 F.3d 834 (9th Cir. 2014) ......................................... 12, 13

*United States v. Bagnariol*,
    665 F.2d 877 (9th Cir. 1981) ................................................. 9

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ............................................. 10

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ............................................... 3

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ............................................... 3

**<u>Statutes</u>**

9 U.S.C. § 3 ................................................................................................ 22

18 U.S.C. § 1341 .................................................................................. 10, 12

18 U.S.C. § 1343 .................................................................................. 10, 12

18 U.S.C. § 1951 ........................................................................ 12, 13, 14, 15

28 U.S.C. § 1367 .................................................................................. 19, 21

**<u>Rules</u>**

Fed. R. Civ. P. 9(b) ............................................................................. 4, 10, 12

Fed. R. Civ. P. 12(b)(1).......................................................................... 4, 20

Fed. R. Civ. P.  12(b)(6)............................................................................passim

**Introduction**

The core of the Buena Vista Rancheria of Me-Wuk Indians' ("Plaintiff" or "Tribe") Complaint is a series of claims against Rhonda Morningstar Pope Flores, the Plaintiff's former Chairwoman for over two decades, filed by her children – the current members of the Plaintiff's governing body. To hoist the case into federal court, the Plaintiff's Complaint also names Ron Piña, a long-time, trusted Director of the Plaintiff's Gaming Authority (whom the Complaint erroneously describes only as Pope Flores' "high school teacher" and "an advisor to the Tribe") and Pati Gonsalves, who joined the board of Defendant Little Big Time Child Development Center ("Little Big Time") only two weeks before this action was filed. Any real disputes between the parties in this case are minor – not what Congress intended when it passed a law to control crime bosses, organized gangs, and money launderers in the Racketeer Influenced and Corrupt Organization ("RICO") Act, 18 U.S.C. §§ 1961 *et seq*. Because the Complaint does not satisfy federal pleading standards, the federal-law claims must be dismissed and the Court should decline to exercise jurisdiction over the others.

**Background**

Plaintiff is a federally recognized Indian tribe located in the state of California. Compl. at ¶¶ 8, 14. Defendants are individuals and businesses with varying degrees of connection with Plaintiff. *Id.* at ¶¶ 9-13. Defendant Pope Flores is the former Chairwoman of the Plaintiff's Tribal Council, a position she held from 2004 until 2024. *Id.* at ¶ 9. She is also the manager and agent of Defendant Grand Prince Odeum LLC ("GP Odeum") and sits on the Board of Directors of Little Big Time. *Id.* at ¶¶ 24, 39.

Defendants Piña and Gonsalves make up the remainder of the current Board of Directors of Little Big Time, which is a (non-tribal) California state-registered Public Benefit Corporation and IRS 501(c)(3) non-profit that has operated a preschool program for Native American children in Sacramento, California. *Id.* at ¶¶ 10-11, 13, 39-40. Defendant GP Odeum is a California limited-liability company that operates an event center in Winters, California. *Id.* at ¶¶ 12, 24.

Pope Flores used her personal funds to build a collection of memorabilia related to the musician "Prince." *Id.* at ¶ 33. Pope Flores purchased the event center in Winters, California – out of which GP Odeum operates – through a loan from Plaintiff. *Id.* at ¶¶ 23-24. Plaintiff alleges it paid for various legal fees and insurance premiums related to the operations GP Odeum and Pope Flores's Prince memorabilia over the course of several years following the receipt of documentation and invoices, but now disputes these payments and alleges that the Tribal Council as a whole never approved those payments. *Id.* at ¶¶ 28-38.

In March 2024, Pope Flores voluntarily resigned from her long-held position of Tribal Chairwoman. *Id.* at ¶ 43, n.1. Despite her resignation, Pope Flores continued serving her community in many other capacities. *Id.* at ¶ 39. Prior to, and continuing after, her resignation, Pope Flores worked to operate the Little Big Time preschool program out of a Tribally owned property known as the "Victorian House" in Sacramento, California. *Id.* at ¶¶ 40-41. Until June 5, 2024, Plaintiff funded much of the operation of Little Big Time's preschool program by paying for its insurance, operating costs, and teacher and staff salaries. *Id.* at ¶ 41. On May 3, and again on May 20, 2024,

the Complaint alleges Plaintiff provided Pope Flores with information that she was required to vacate the Victorian House. *Id.* at ¶¶ 44, 50. At the time, Pope Flores disputed (through a letter from her attorney) that she needed to so vacate based on her understanding of her tenancy. *Id.* at ¶¶ 51-52.

Since her resignation as Tribal Chairwoman, Pope Flores has remained politically active in Tribal matters and continues to voice her opinions on matters involving Tribal governance and policy, both in person and over social media platforms. *Id.* at ¶¶ 48-49, 62-64. Gonsalves and Piña have also expressed their opinions and concerns regarding Tribal matters, including the cessation of Tribal funding for the operation of Little Big Time's preschool for Native American children. *Id.* at ¶¶ 46, 60. Plaintiff's Complaint revolves around the allegedly unlawful actions of the Defendants in collecting or attempting to collect payment from Plaintiff for business-related expenses, in occupying or otherwise using Tribally owned property, and in expressing opinions and concerns regarding the current Tribal government and its policies. *Id.* at ¶¶ 31-32, 37-38, 46, 48-49, 51-52, 54-60, 62, 64.

## Legal Standards

In reviewing a Rule 12(b)(6) motion to dismiss, the court must find that the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the Court must accept as true all facts pleaded in the Complaint, it is free to ignore any facts merely pleaded as legal conclusions or threadbare allegations of the elements of a claim. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *Whitaker v. Tesla*

*Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) ("Taken together, *Iqbal* and *Twombly* require well-pleaded facts, not legal conclusions[.]").

Many of Plaintiff's claims are allegations of fraud, which require a heightened pleading standard under Federal Rule of Civil Procedure 9(b), so that Plaintiff must state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). For these claims, Plaintiff must "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme," *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir. 1991), and cannot "simply lump together multiple defendants without specifying the role of each defendant in the fraud," *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prod. Liab. Litig.,* 826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011). As explored further *infra* in Section IV(A), Plaintiff's Complaint fails to meet this heightened standard and Counts I and II must be dismissed because the Defendants do not have effective "notice of the particular misconduct which is alleged to constitute the fraud charged." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

This motion also requests dismissal of Counts III, IV, and V because exercising supplemental jurisdiction is inappropriate without the federal claims, and alternatively, dismissal of Count IV under Rule 12(b)(1) because the Court lacks supplemental jurisdiction over it, and a stay of portions of Count I and all of Count V because they are subject to an agreement to arbitrate.

## Argument

**I. The Court should dismiss Count I of the Complaint because Plaintiff has failed to meet both the general and specific pleading standards required for a violation of 18 U.S.C. § 1961.**

Plaintiff's Count I, "Federal RICO," fails to meet the general pleading standards required for civil claims, fails to properly plead the basic elements of a RICO violation, and fails to sufficiently plead the elements of the alleged predicate acts. *See* Compl. at ¶¶ 67-76. As such, Count I is legally insufficient, and should be dismissed under Rule 12(b)(6) for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6); *N. Star Int'l v. Ariz Corp. Comm'n.,* 720 F.2d 578, 581 (9th Cir. 1983) (the purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint).

In general, a plaintiff bringing a civil suit in federal court must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the reviewing court generally accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff, *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984), it need not assume the truth of legal conclusions plaintiffs assert in the form of factual allegations, *U.S. ex rel. Chunie v. Ringrose,* 788 F.2d 638, 643 n.2 (1986). Nor should the court assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen.*

*Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In the context of a civil RICO claim, a plaintiff must sufficiently plead five general

elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity (known as "predicate acts") (5) causing injury to the plaintiff's business or

property. *Grimmet v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C.

§§ 1964(c), 1962(c)). Plaintiffs have insufficiently pleaded several of the general civil

RICO elements, and the case must be dismissed.

### A. Plaintiff has failed to plausibly allege the existence and conduct of a RICO enterprise.

Plaintiff alleges that Defendants have formed an "association-in-fact for the

purpose of depriving the Tribe of its property," that the activities of the association-in-

fact "affected interstate commerce," and that the association-in-fact therefore constitutes

an "enterprise" within the meaning of 18 U.S.C. § 1961(4). Compl. at ¶ 70. But merely

restating the language of the RICO statute is not enough to plausibly allege a qualifying

RICO enterprise. Instead, Plaintiff must allege at least three structural features: a

common purpose, relationships among those associated with the enterprise, and

sufficient longevity of the enterprise. *Boyle v. United States,* 556 U.S. 938, 946 (2009).

Each of these elements requires specific allegations as to the conduct of the individual

Defendants and the enterprise as a whole. For instance, to establish a common

purpose, plaintiffs must allege that the group "engaged in enterprise conduct distinct

from their own affairs." *Comm. to Protect Our Agric. Water v. Occidental Oil & Gas

Corp.*, 235 F. Supp. 3d 1132, 1173 (E.D. Cal. 2017). To establish the requisite

relationship among those associated with the enterprise, plaintiffs must plead an "ongoing structure or organization to the enterprise" and allege "some participation in the operation or management of the enterprise" by members. *Id.* at 1173-74. And to establish the requisite longevity of the enterprise, plaintiffs must allege that the enterprise has operated for an amount of time "sufficient to permit these associates to pursue the enterprise's purpose." *Boyle,* 556 U.S. at 946.

Apart from the allegations linked to Pope Flores, the Complaint is almost completely void of specific factual allegations relating to the individual conduct of the remaining Defendants and is lacking sufficient allegations concerning the structure or lifespan of the alleged RICO enterprise. Regarding Piña, Plaintiff merely alleges that Piña sits on the board of Little Big Time, Compl. at ¶ 5, was Pope Flores' high school teacher and a former advisor to Plaintiff, *id.* at ¶ 11*,* and at one point contacted the Plaintiff's Chief of Staff regarding an alleged email from a concerned parent of a Little Big Time student sent to the Tribe's business partner, Caesars Entertainment, *id.* at ¶ 46. Plaintiff alleges only that Gonsalves sits on the Board of Directors of Little Big Time and is Pope Flores' personal friend, *id.* at ¶ 10, and that she sent one email to the new Tribal Chairwoman with her concerns about Tribal funds and a desire for Little Big Time to remain open, *id.* at ¶ 60. Plaintiff alleges no specific, individualized conduct of the actions of the corporate entities GP Odeum and Little Big Time, describing only the businesses' location and Plaintiff's funding of Little Big Time. *Id.* at ¶¶ 12, 13, 40-41.

While Plaintiff accuses Pope Flores of being at "the center of the scheme" and responsible for organizing and leading the alleged RICO enterprise, *id.* at ¶ 5, the

Complaint does not detail how the alleged "association-in-fact" enterprise actually came to be. For example, while the Complaint alleges that "[b]eginning in or about 2020, . . . Defendant Pope Flores organized and led a RICO enterprise" there are no specific allegations of any actions taken by Piña until May 2024, no allegations of any specific actions taken by Gonsalves until June 2024, and no allegations of any specific actions taken by the lumped "Defendants" until May 2024. Compl. ¶¶ 5, 46, 54, 60.

These barebone allegations not only fail to meet the pleading standards required for a civil RICO claim, but also generally fail to allege *any* wrongdoing or unlawful behavior by the enterprise. While the Complaint does link certain additional factual allegations with the Defendants as a whole, *id.* at ¶¶ 54-59, such generalized, vague allegations do not meet Plaintiff's burden to plausibly allege an association-in-fact. *See Doan v. Singh*, 617 Fed. App'x 684, 686 (9th Cir. 2015) (finding that plaintiff failed to allege a RICO enterprise because "it is not clear what exactly each individual did, when they did it, or how they functioned together as a continuing unit"); *see also Comm. to Protect Our Ag. Water,* 235 F. Supp. 3d at 1174 (plaintiffs must "allege facts showing some participation in the operation or management of the enterprise by members" (internal citations omitted)). By failing to detail how the enterprise was formed, Plaintiff has failed to establish the requisite structure and longevity of the enterprise. *See Boyle,* 556 U.S. at 946; *see also Fraser v. Team Health Holdings, Inc.,* No. 20-cv-04600-JSW, 2022 WL 971579, at *12 (N.D. Cal. Mar. 31, 2022) ("RICO liability must be predicated on a relationship more substantial than a routine business relationship.").

1    Finally, Plaintiff has failed to allege that the purported RICO enterprise is

2    "engaged in, or having an effect on, interstate commerce," a core element of a RICO

3    claim that it must establish. *Musick v. Burke,* 913 F.2d 1390, 1398-99 (9th Cir. 1990)

4    (finding, even in a case involving small amounts of out-of-state goods, that "RICO

5    jurisdiction ends where local activities have incidental effects on interstate commerce").

6    Plaintiff describes interstate commerce only when reciting the statutory language of the

7    RICO statute, but offers no explanation as to how that statutory language applies to this

8    case. Compl. at ¶¶ 70, 72. This type of conclusory statement, with no connection to

9    factual allegations, is insufficient to establish the requisite "interstate nexus." *LaComba*

10   *v. Eagle Home Loans and Inv., LLC,* No. 2:23-cv-00370-KJM-DB, Dkt. 49 slip op. at 5-6

11   (E.D. Cal. Feb. 5, 2024) (finding that "it is unclear how two California entities engaged in

12   lending activities within California are engaged in or affect interstate commerce").

13   Nothing in the Complaint alleges that the actions of the purported association-in-fact

14   enterprise, or even the predicate acts as pleaded, had the necessary *effect* on interstate

15   commerce for jurisdiction under the RICO statute. *See United States v. Bagnariol*, 665

16   F.2d 877, 892-94 (9th Cir. 1981).

17   Because Plaintiff has failed to sufficiently plead a RICO enterprise, including an

18   effect on interstate commerce, it cannot sustain its civil RICO claim, and this Court

19   should dismiss Plaintiff's Count I under Rule 12(b)(6).

20   **B. Plaintiff has failed to plausibly allege a pattern of racketeering activity
         through the commission of predicate acts.**

21

22   Along with the pleading standards discussed above, Plaintiff must plead a

23

"pattern of racketeering activity," which requires commission of at least two enumerated

predicate acts. 18 U.S.C. § 1961(1). In this case, Plaintiff accused Defendants of

committing three predicate acts: mail fraud, wire fraud, and extortion. Compl. at ¶ 72; 18

U.S.C. §§ 1341, 1343, 1951. But Plaintiff has failed to plausibly allege the statutory

elements – including the heightened pleading standards for fraud claims – of these

predicate acts.

The mail- and wire-fraud statutes alleged are nearly identical "except for the

particular method used to disseminate the fraud, and contain three elements: (A) the

formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that

scheme, and (C) the specific intent to defraud." *Eclectic Props. E., LLC v. Marcus &*

*Millichap Co.,* 751 F.3d 990, 997 (9th Cir. 2014). Mail fraud is disseminated by placing,

or causing to be placed, "any matter or thing to be sent or delivered by the postal

services" in any post office or authorized mailbox, 18 U.S.C. § 1341, while wire fraud is

disseminated by causing to transmit by means of wire, in interstate or foreign

commerce, any writings, signs, signals, pictures, or sounds, 18 U.S.C. § 1343.

Where a plaintiff alleges racketeering by means of mail and wire fraud, the

heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to those

predicate acts. *Moore v. Kayport Package Express,* 885 F.2d 531, 540 (9th Cir. 1989).

The fraud allegations must be "specific enough to give defendants notice of the

particular misconduct," thereby enabling them to "defend against the charge and not just

deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

1097, 1106 (9th Cir. 2003). Therefore, allegations of fraud must be "accompanied by the

who, what, when, where, and how of the misconduct charged." *Id*. Plaintiff must "detail

with particularity the time, place, and manner of each act of fraud, *plus the role of each*

*defendant in each scheme*." *Lancaster Cmty. Hosp*., 940 F.2d at 405 (emphasis added).

Plaintiff's generalized and conclusory allegations fail to establish the statutory

elements of the fraud alleged and lack the heightened specificity and detail required by

Rule 9(b). *See Schreiber Dist. Co. v. Serv-Wel Furniture Co., Inc.,* 806 F.2d 1393, 1401

(9th Cir. 1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the

time, place, and specific content of the false representations as well as the identities of

the parties to the misrepresentation."). Plaintiff makes incomplete and vague statements

regarding the alleged mail and wire fraud. With respect to Pope Flores and GP Odeum,

for example, the Complaint says that invoices for various legal services "were sent via

U.S. Mail to the Tribe's Accounting Office," but provides no details as to Pope Flores or

GP Odeum's roles in these actions, Compl. At ¶ 28; and, no allegations regarding the

use of the U.S. Mail system are made at all about Defendants Piña, Gonsalves, or Little

Big Time. *See e.g.*, Compl. at ¶¶ 29-30 (similarly using a passive writing style to note

that that invoices for legal services "were received by the Tribe" on particular dates, and

"were mailed.") Plaintiff otherwise makes a string of vague, generalized allegations

attributed to "Defendants" generally. *See* Compl. at ¶¶ 54-58. But this type of "lumping

together" of defendants is exactly what Rule 9 prohibits. *In re Toyota Motor Corp*., 826

F. Supp. 2d at 1201 ("A plaintiff may not simply lump together multiple defendants

without specifying the role of each defendant in the fraud."); *Pfau v. Mortenson*, 858 F.

Supp. 2d 1150, 1157 (D. Mont. 2012) (dismissing RICO claim based on fraud where all

references to one defendant were "lumped together" with other defendants and "any alleged wrongdoings attributed to him [were] clearly labels and conclusions or naked assertions") (internal quotations omitted). Particularly for Defendants Piña and Gonsalves, but also including Pope Flores, Little Big Time, and GP Odeum, the Complaint does not contain the factual allegations necessary for them to know which actions they supposedly took that constitute the complained-of mail fraud or wire fraud.[1] *See Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged"). Because Plaintiff has failed to meet the pleading standards of Rule 9(b) for its allegations of mail and wire fraud, its civil RICO claim cannot be supported by these predicate acts.

Furthermore, although the predicate act of extortion does not require the heightened pleading standards of Rule 9(b), it does require establishment of specific statutory elements. Plaintiff has pleaded extortion under the Hobbs Act, which the statute defines as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2); Compl. ¶¶ 5, 72(C). When assessing allegations of extortion, courts must differentiate between "legitimate use of economic fear – hard bargaining – and wrongful uses of such fear – extortion." *United Bhd. of Carpenters and*

---

[1] A handful of actions are alleged to have been taken by Piña and Gonsalves individually, but those allegations do not include descriptions of what Plaintiff believes the "fraud" of those actions to be, or any intent to defraud through those actions. *See* Compl. ¶¶ 46, 60; 18 U.S.C. §§ 1341, 1343.

*Joiners of Am. v. Bldg. and Constr. Trades Dept.*, 770 F.3d 834, 838 (9th Cir. 2014). "Warnings and notices" of actions by a defendant who may lawfully take those actions do not constitute extortion. *Rothman v. Vedder Park Mgmt.*, 912 F.2d 315, 318 (9th Cir. 1990).

The Complaint does not contain the necessary factual allegations to sustain a claim of extortion against Defendants. Because the Complaint does not link the specific predicate acts to specific factual allegations, Defendants cannot discern which alleged actions Plaintiff believes are the attempted acts of extortion. *See* Compl. ¶ 72; *Slade v. Gates,* No. 01-8244-RMT, 2002 WL 31357043 at *6 (C.D. Cal. Oct. 2, 2002). (RICO predicate acts "must be sufficiently pled to give Defendants notice of the factual basis of the claim"). Plaintiff alleges that Pope Flores provided an email address for Caesars Entertainment to a parent of a child enrolled in Little Big Time, Compl. at ¶ 45,[2] that she contacted Tribal Council indicating her belief there was a conspiracy taking place to harm Plaintiff, *id.* at ¶ 48, that she shook her fist at a Tribal employee and said, "God is watching you and will punish you," *id.* at ¶ 62, and that she sent a message to contractor of Plaintiff's, stating that "people would be angry" if he painted over her Prince mural, *id.* at ¶ 63. The Complaint also contains vague allegations that Pope Flores has defamed Tribal employees on social media and otherwise, but provides no details for this allegation. *Id.* at ¶¶ 48, 49. While Plaintiff may dislike these alleged

[2] Although Plaintiff's business relationship with Caesar's Entertainment is referenced throughout the Complaint, Plaintiff has not alleged any specific *injury* to its relationship resulting from Defendants' alleged conduct. *See United Bhd. Of Carpenters and Joiners of Am.*, 911 F. Supp. 2d at 1126-27; *Marshall v. Goguen*, 604 F. Supp. 3d 980, 1003 (D. Mont. 2022); Comp. ¶ 74 (alleging only lost money paid to Pope Flores and GP Odeum and possession and resale of real property).

actions by Pope Flores, they do not constitute "actual or threatened force, violence, or fear" or the attempt to obtain any property "under color of official right" as the pleaded predicate act of extortion requires. *See* 18 U.S.C. § 1951(b)(2). As alleged, Pope Flores did not engage in any violent or fear-inducing activities by lobbying for the continued operation of Little Big Time and expressing her opinion on Plaintiff's decisions that were personally affecting her and her businesses. The Complaint's allegations that Pope Flores and Little Big Time are "squatting" in the Victorian House do not amount to attempted extortion, but are instead a reflection of her legitimate understanding of her and Little Big Time's tenancy in the property at the time of her attorney's response. *See* Compl. ¶¶ 47-52. Finally, if Plaintiff is asserting that Pope Flores or GP Odeum engaged in extortion or attempted extortion through the alleged receipt of legal fees or payment for insurance premiums, Compl. ¶¶ 31, 36, these allegations still do not state a claim upon which relief can be granted. The Supreme Court has defined that such an "under color of official right" extortion claim is the colloquial equivalent of "'taking a bribe'"; but the Complaint alleges nothing of the sort by Pope Flores. *Ocasio v. United States*, 578 U.S. 282, 285 (2016) (quoting *Evans v. United States*, 504 U.S. 255, 260 (1992) (holding that extortion under the Hobbs Act occurs where "a public official has obtained a payment to which he was not entitled, knowing that the payment was made *in return for official acts*" (emphasis added)). None of these alleged actions, even if proven to be true, constitute the predicate act of extortion or attempted extortion under 18 U.S.C. § 1951.

Nor do Plaintiff's scant allegations related to the other Defendants support a

claim of extortion or attempted extortion. The Complaint accuses Gonsalves only of urging the current Tribal Chairwoman over email to halt the closure of Little Big Time and expressing worry for the Chairwoman and her family, Compl. at ¶ 60, accuses Piña of having a conversation that merely alludes to a Little Big Time parent's communication with a Tribal business partner, *id.* at ¶ 46, and makes no specific allegations related to the *actions* of GP Odeum or Little Big Time independent of Pope Flores. These actions, if proven true, amount only to Gonsalves's and Piña's lawful expression of concern over the political activities of Plaintiff and its impact on a Tribally funded program that serves local Native American Children. Plaintiff's allegations fall far short of alleging the violence, force, or fear-inducing actions necessary to constitute extortion as defined in 18 U.S.C. § 1951.

Finally, even if the actions above were appropriately pleaded as predicate acts, the Complaint does not demonstrate the "pattern" of racketeering necessary to substantiate a RICO violation. A pattern requires showing a "relatedness of racketeering activities" and that the predicate acts "themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). First, Plaintiff's Complaint fails to appropriately plead the necessary relatedness between the alleged predicate acts, particularly the relationship between the alleged actions involving GP Odeum's legal fees and the actions to save Little Big Time. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000); Compl. at ¶¶ 26-32, 54-63. Second, the Complaint fails to meet the continuity requirement. *See H.J., Inc.*, 492 U.S. at 241-42 (describing continuity as both a "closed-

and open-ended concept"). Because there is such a distinct difference between the actions alleged to have taken place in 2022-2023 relating to GP Odeum's legal fees, Compl. ¶¶ 27-32, and the alleged actions in May and June 2024 relating to Little Big Time, Compl. ¶¶ 44-60, they cannot be linked to establish continuity. *See Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995). And beyond bare statements that Defendants' actions are "ongoing," Compl. ¶ 66, the Complaint doesn't contain the type of allegations of "[p]redicate acts that specifically threaten repetition or that become a 'regular way of doing business,'" *Allwaste*, 65 F.3d at 1528, to satisfy the open-ended continuity requirement on behalf of all five Defendants. Plaintiff has failed to sufficiently plead each of the alleged predicate acts and therefore failed to sufficiently plead a pattern of racketeering under RICO.

**II. The Court should dismiss Count II of the Complaint because Plaintiff has failed to adequately plead a conspiracy as required by 18 U.S.C. § 1962(d).**

Count II of Plaintiff's threadbare Complaint alleges that defendants Pope Flores, Piña, and Gonsalves violated 18 U.S.C. § 1962(d) through an agreement and conspiracy to violate the RICO statute, and that each of the three "agreed to participate, directly or indirectly, in the conduct of the enterprise's affairs." Complaint ¶ 78. That section makes it "unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section." 18 U.S.C. § 1962(d).

As detailed above, Plaintiff has failed to plead a RICO violation against any of the five defendants. Because the Complaint fails to "adequately plead a substantive violation of RICO," it cannot include a valid "claim that a conspiracy to violate RICO

existed." *Howard*, 208 F.3d at 751; *LaComba*, No. 2:23-cv-00370-KJM-DB, slip op. at 5 (citing *Howard* and not reviewing plaintiffs' conspiracy claim after determining the plaintiffs' failed to meet the pleading standards for a substantive RICO violation).

Even if the Court were to find that the Plaintiff had appropriately pleaded a substantive RICO claim against Defendants, Count II of the Complaint must still be dismissed. "To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard*, 208 F.3d at 751. The agreement to violate RICO doesn't need to be express, but its existence does need to be "inferred from the words, actions, or interdependence of activities and persons involved." *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 775 (9th Cir. 2002). Aside from the mere conclusory legal statements alleging Pope Flores, Piña, and Gonsalves agreed to participate in the conduct of a RICO enterprise, Compl. ¶ 78, the Complaint fails to allege any facts sufficient to meet the pleading standard required to survive a motion to dismiss under Rule 12(b)(6). *See Associated Gen. Contractors of Cal., Inc.*, 459 U.S. at 526 ("It is not . . . proper to assume that the [plaintiff] can prove facts that it has not alleged.").

The only factual allegations in the Complaint that involve any actual communications between any combination of defendants Pope Flores, Gonsalves, and Piña are in paragraphs 46 and 60. Paragraph 46 alleges only that a conversation between Piña and a tribal employee occurred, and during the course of that conversation, Piña "referenced conversations he had with Defendant Flores" concerning

an earlier email, allegedly sent to a business partner of Plaintiff. Compl. at ¶ 46. Nothing in paragraph 46 alleges that conversation between Piña and Pope Flores contained any discussion of engaging in the operation of a RICO enterprise, or in the alleged predicate acts of mail fraud, wire fraud, or extortion. Paragraph 60 asserts only that Gonsalves communicated with Pope Flores and Piña "about her allegations" – allegations that the paragraph as written describe as *Gonsalves's* own allegations concerning her "'[w]orries of a serious nature' involving Tribal funds." *Id.* at ¶ 60. Like paragraph 46, nothing in paragraph 60 even alleges a fact to support Plaintiff's claim of a violation of 18 U.S.C. § 1962(d) by Gonsalves, Piña, and Pope Flores. Without a communication, it is impossible for Plaintiff to sustain its conspiracy allegations.

Beyond those two allegations of communications, the only other mention in the Complaint *to any combination* of the actions of the individual defendants Gonsalves, Piña, and Pope Flores are in paragraphs 5, 39, 54-58, 59, and 74.[3] Paragraph 5 is an introductory overview of Plaintiff's alleged claims that names Gonsalves and Piña in their alleged actions of "assist[ing] the RICO enterprise by conspiring with Flores to threaten current Tribal leadership . . ." but does not contain any factual allegations of how, when, or what specifically occurred. *Id.* at ¶ 5. Paragraph 39 alleges that Pope Flores, Gonsalves, and Piña are the Board of Directors for Little Big Time. *Id.* at ¶ 39. Paragraphs 54-58 lump all five defendants together (including Little Big Time and GP

---

[3] Paragraphs 84-86 are the Complaint's non-RICO civil conspiracy claim count and include vague references that the three defendants had an "agreement" and a "meeting of the minds" but do not make any actual factual (rather than conclusory legal) allegations. *See, e.g.*, *Iqbal*, 556 U.S. at 676.

Odeum, who are not named in Count II) and alleges that they jointly caused certain charges to be made to Plaintiff's accounts. *Id.* at ¶¶ 54-58. These paragraphs do not contain any allegations of discussions or agreements *between or amongst* Pope Flores, Gonsalves, and Piña to engage in the alleged activities. Paragraph 59 repeats the allegation the three individuals are Board members of Little Big Time, and that they "continue to unlawfully operate LBT"; neither of these allegations constitute either a conspiracy to violate RICO or the alleged individual predicate acts of mail fraud, wire fraud, or extortion. *Id.* at ¶ 59. Finally, paragraph 74 alleges that Plaintiff is "being deprived of its ability to possess and sell its valuable real property" by Pope Flores, Gonsalves, and Piña, but contains no factual allegations of any conspiracy between the three defendants to do so that would be in violation of 18 U.S.C. § 1962(d). *Id.* at ¶ 74.

While it "suffices that [a conspirator] adopt the goal of furthering or facilitating the criminal endeavor," *Salinas v. United States*, 522 U.S. 52, 65 (1997), nothing in the Complaint comes remotely close to this level of allegation. Instead, the claims are only "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that a conspiracy to violate RICO exists. *Iqbal*, 556 U.S. at 678. Nowhere in the handful of paragraphs that Gonsalves or Piña are mentioned by name are the allegations sufficient to identify a conspiracy under 18 U.S.C. § 1962(d), and Count II should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff's attempt to mold the facts of this case from a well-meaning attempt to save a beloved preschool serving an under resourced population into a civil RICO conspiracy case cannot be allowed to continue.

**III. Plaintiff's Non-RICO claims must be dismissed or stayed.**

The only bases for federal-question jurisdiction in this case are the federal RICO statutes underlying Counts I and II of Plaintiff's complaint. The remainder of Plaintiff's claims are premised on the Court's supplemental jurisdiction under 28 U.S.C. § 1367. Compl. ¶ 3. In fact, supplemental jurisdiction is not appropriate over Count IV in this case. Even if the Court *could* exercise supplemental jurisdiction over Count IV, however, it should decline to exercise supplemental jurisdiction over Counts III-V under 18 U.S.C. § 1367(c)(3) once the RICO claims are properly dismissed..

> **A. Plaintiff's conversion claim does not share a common nucleus of operative fact with the RICO claims, so the Court independently lacks jurisdiction over it.**

Although federal courts can exercise supplemental jurisdiction over state-law claims "when they stem from 'a common nucleus of operative facts' and are 'such that a plaintiff would ordinarily be expected to try them in one judicial proceeding,'" *Pac. Steel Grp. v. Comm. Metals. Co.*, 600 F. Supp. 3d 1056, 1079 (N.D. Cal. 2022), Plaintiff cannot meet that standard here with respect to the conversion claim in Count IV. The RICO, civil-conspiracy, and unjust-enrichment claims are based on facts from 2024 relating to Little Big Time, use of Little Big Time funds, and closure of the daycare operated by Little Big Time. Compl. ¶¶ 43-87, 93-97. The conversion claim doesn't derive from those same operative facts, however. The conversion claim only involves allegations regarding Pope Flores, and relates to the alleged payment of insurance premiums for Pope Flores' benefit from 2016-2023, *id.* ¶¶ 36-38, 88-92.

As the Second Circuit noted,

> We have routinely upheld the exercise of pendent [i.e., supplemental] jurisdiction where the facts underlying the federal and state claims substantially overlapped, or where presentation of the federal claim necessarily brought the facts underlying the state claim before the court. Conversely, we have found pendent [i.e., supplemental] jurisdiction lacking when the federal and state claims rested on essentially unrelated facts.

*Lyndonville Savings Bank v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (internal citations omitted). In other words, where state and federal claims are based on dissimilar facts and legal theories, the state claims must be dismissed for lack of jurisdiction. *See, e.g., Highway Equip. Co. v. Feco, Ltd.*, 469 F.3d 1027, 1038-39 (Fed. Cir. 2006) (remanding with instructions to dismiss state-law claim for violation of a dealership agreement terminated in 2002 because it did not share a common nucleus of operative fact with federal patent claim for a patent issued in 2003). Plaintiff's conversion claim is based on completely different facts from the RICO, civil-conspiracy, and unjust enrichment claims, and therefore the Court lacks jurisdiction over it and it must be independently dismissed under Rule 12(b)(1).

**B. Even if the Court had supplemental jurisdiction over all of Plaintiff's non-RICO claims, the Court should decline to exercise supplemental jurisdiction over those claims because the Plaintiff has failed to state a RICO claim.**

Even where a district court has supplemental jurisdiction over state claims, it may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As discussed above, Plaintiff has failed to state a claim for relief under RICO, so Counts I and II should

therefore be dismissed. As the Supreme Court found, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent [now known as "supplemental"] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988), *superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000). Indeed, when a federal claim is dismissed and only state-law claims remain, a federal court "normally would not exercise supplemental jurisdiction over any of the remaining [ ] state claims." *Strojik v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp. 3d 1332, 1343 (E.D. Cal. 2020) (making an exception to that "normal" rule "to address the clearly faulty negligence claim" but declining to exercise supplemental jurisdiction on two other state-law claims). Here, where neither the Court nor the parties have invested any time into litigating the state-law claims in federal court, the Court has no reason to maintain jurisdiction over those claims, and dismissal is appropriate.

## IV. In the alternative, portions of Count I and all of Count V must be stayed pending arbitration.

In the alternative to all the foregoing arguments, this Court should stay the proceedings on portions of Count I and all of Count V in favor of arbitration under 9 U.S.C. § 3. *See Eshagh v. Terminix Int'l Co.*, No. 11-CV-0222, 2012 WL 1669416, at *10 (E.D. Cal. May 11, 2012) ("Where a dispute is subject to arbitration under the terms of a written agreement, a district court shall stay the trial of the action until such

arbitration has been had in accordance with the terms of the agreement."). Portions of Count I and all of Count V of the Complaint stem from Defendants' alleged use of Tribal funds to pay for legal fees Pope Flores incurred during the permitting process for the Grand Prince Odeum building. *See* Compl. ¶¶ 26-32. In fact, the amount Pope Flores incurred in legal fees was added to the principal balance of a loan she received from Plaintiff. Pope Flores Aff. ¶¶ 7-9 and Ex. 2. And this loan is governed by a promissory note that includes an arbitration provision in which the parties agreed to arbitrate "any dispute or claim that is directly or indirectly related to" the promissory note. Pope Flores Aff. ¶¶ 4-6 and Ex. 1 at 6-7.[4] Thus, if the Court does not otherwise dismiss Plaintiffs' claims, it must stay the claims subject to the arbitration clause.

---

[4] Federal courts are free to consider facts outside the complaint when examining whether "a suit or proceeding is referable to arbitration" under "an agreement in writing for such arbitration." 9 U.S.C. § 3. *See, e.g., Digital Control Inc. v. Radiodetection Corp.*, 294 F. Supp. 2d 1199, 1202-1203 (W.D. Wash. 2003) (considering language of arbitration agreement and declarations in determining arbitrability of dispute).

**Conclusion**

Plaintiff's RICO claims do not meet the pleading standards required by the Federal Rules of Civil Procedure, and must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Independently, its common-law conversion claim arises from a completely different set of facts and must be dismissed for lack of subject-matter jurisdiction. And because the RICO claims must be dismissed, the Court should decline to exercise its supplemental jurisdiction to hear the remaining claims and dismiss them. Finally, if the Court doesn't otherwise dismiss or stay them, the Court should stay portions of Count I and all of Count V pending binding arbitration.

Dated: September 13, 2024     Respectfully submitted,

By: */s/ Vanya S. Hogen*
Vanya S. Hogen

By: */s/ Little Fawn Boland*
Little Fawn Boland

Attorney for Defendants,
Rhonda Morningstar Pope Flores, Pati
Gonsalves, Ron Piña, Little Big Time Child
Development Center, and Grand Prince
Odeum LLC