**From:** Jim Erenzo jim@collective-strategies.com
**Subject:** Loan Agreement
**Date:** January 12, 2022 at 9:10 AM
**To:** Rhonda Pope rhonda@buenavistatribe.com



Hi Rhonda

A bit delayed.  But, please review this loan document for the Winters property.  If good, please execute and get back to me for the file.  Please notice the interest rate changed effective from the start.   Once this is in place, I'll have Abdul adjust the principal balance for the payments (addl principal) you made and the payroll deduction to accommodate the revised interest rate, moving forward.

Now that Padraic has had little bandwidth the past 2 weeks, we now have a template and wrapping up Jessalyn's and Waynes.

Thanks
Jim
817.909.3338 (Cell/Text)



**PROMISSORY NOTE Buena Vista to R Pope (01-10-2022) v.2.docx**
38 KB

Exhibit 1 - Page 1

# PROMISSORY NOTE
### (*Winters Building Loan*)

**$664,415**                                                                              December 23, 2020
                                                                                         Amador County, California

FOR VALUE RECEIVED, the undersigned Rhonda Morningstar-Pope Flores ("***Borrower***"), by executing this promissory note ("***Note***"), hereby promises to pay to the order of the BUENA VISTA RANCHERIA OF ME-WUK INDIANS, a federally recognized Indian tribe ("***Lender***"), the principal amount of Six Hundred Sixty-Four Thousand, Four Hundred Fifteen Dollars ($664,415.00) (the "***Loan Amount***") (or such other principal as may be due at the time), together with interest and other amounts, in each case pursuant to the terms stated below, as of the date stated above (the "***Issue Date***").

    **1.**     **Principal Amount.** The principal amount of this Note is Six Hundred Sixty-Four Thousand, Four Hundred Fifteen Dollars ($664,415.00) owed by Borrower to Lender, as such amount may be increased or decreased pursuant to this Note.

    **2.**     **Interest.**

    (a)     Interest will accrue on the unpaid principal balance of this Note at the Applicable Rate (defined below) commencing on the Issue Date.

    (b)     The applicable interest rate hereunder (the "***Applicable Rate***") shall be fixed and equal to 2.75% per annum; provided, however, that if any Event of Default (hereinafter below) occurs, the Default Rate (defined below) shall apply to all unpaid principal.

    **3.**     **Maturity Date; Balloon Payment**. The Maturity Date shall be December 23, 2025 ("***Maturity Date***"). LENDER AND BORROWER ACKNOWLEDGE THAT THIS NOTE REQUIRES THE ENTIRETY OF THE OUTSTANDING PRINCIPAL AMOUNT PLUS ALL OTHER AMOUNTS DUE HEREUNDER ON THE MATURITY DATE TO BE PAID ON THE MATURITY DATE, except as may otherwise be accelerated or declared due pursuant to the terms of this Note. The Borrower hereby acknowledges that this is a balloon note and on the Maturity Date a substantial portion of the outstanding balance of this Note will remain unpaid and be owed to Lender at that time.

    **4.**     **Repayment and Prepayment of Loan Amount**.

    (a)     The Borrower shall repay to the Lender the Loan Amount on the dates and in the amounts set forth in the attached <u>Amortization Schedule</u>.

    (b)     To the extent not previously paid, the Borrower shall repay the Lender the outstanding Loan Amount on the Maturity Date, together with accrued and unpaid interest thereon.

(c) The principal and interest due pursuant to this Note may be prepaid in whole or in part, at any time during the term of this Note, without penalty, without the consent of the Lender. Any such prepayment shall be applied first against any permitted charges, then to accrued and unpaid interest, and the balance shall be applied against the principal due hereunder.

5. **Security; Recourse**. This Section 5 shall constitute a security agreement (the "*Security Agreement*") for purposes of this Note and in order to secure the repayment thereof by Borrower. This Note shall be secured by a lien on (A) all revenues and assets of Borrower, however held or wherever located, including the proceeds of this Note, and (B) any account into which such funds shall be deposited (together, the "*Recourse Assets*"), *provided that* such security interest provided by Borrower to Lender hereunder shall be subject to any pre-existing and senior secured interests, pledges, grants, liens, and other encumbrances provided by Borrower to third parties. Borrower confirms that all pledges and security interests granted under this Security Agreement secure all of the obligations under and in respect of this Note in accordance with the terms hereof.

6. **Use of Proceeds**. Unless otherwise agreed to in writing, Borrower shall use the loan proceeds under this Note for purposes of funding the purchase, remodeling, and operation of a community center building located at 201 Main Street, Winters, California (the "*Building*").

7. **Events of Default**. Upon the occurrence of any one or more of the following events during the Term hereof (each an "*Event of Default*" and together "*Events of Default*"):

(a) Failure to make any payment of the principal amount on this Note on the date when due and payable;

(b) Failure to make any payment of interest or other charges or amounts on this Note on the date when due and payable;

(c) The failure to use the proceeds disbursed under this Note in accordance with the Use of Proceeds section above;

(d) The failure by Borrower to place the Building into service on or before March 31, 2022; or

(e) The performance or suffering, directly or indirectly, by the Borrower or any subdivision, unit, or component of the Borrower, of any of the following: (i) dissolving, reorganizing, restructuring or renaming Borrower, or restricting or eliminating the right of Borrower to conduct operations; (ii) failing to timely pay or cause to be paid any tax, imposition, judgment, award or charge of any nature that, if not paid, would permit enforcement of a lien on the Recourse Assets, other than any such payment that is being contested in good faith and, during the time such payment is being contested, does not create any risk of foreclosure or forfeiture of the Recourse Assets; (iii) engaging in any act that constitutes waste, fraud, or abuse with respect to the Recourse Assets; or (iv) revoking, or attempting to revoke, any covenant or obligation provided for hereunder or with respect to Borrower.

Then, or at any time thereafter, the Lender may give notice of such Event of Default to the Borrower and accelerate the Note and thereby declare this Note and indebtedness evidenced hereby to be forthwith due and payable, notwithstanding anything contained herein to the contrary. In addition to other remedies provided hereby, in the event of default, Lender may retake possession of the Building pursuant to a voluntary forfeiture or in accordance with the applicable foreclosure and repossession laws of the State of California.

8.  **Remedies Cumulative**. The remedies of Lender, as provided in this Note, shall be cumulative and concurrent and may be pursued singularly, successively or together, are not exclusive and are in addition to any other remedy available in law or equity at the sole discretion of Lender, and may be exercised as often as occasion therefore occurs; and the failure to exercise any such right or remedy may in no event be construed as a waiver or release thereof. The Borrower shall remain liable for any deficiency balance if what the Lender receives from the collateral, if any, for the Loan does not satisfy all amounts owed it by Borrower.

9.  **Default Rate**. Upon the Maturity Date, or upon the occurrence of an Event of Default, any remaining unpaid principal shall thereafter bear interest at the rate of 2.00% above the Applicable Rate (the "***Default Rate***").

10. **Savings Clause**. The parties hereto intend and believe that each provision of this Note comports with all applicable tribal, local, state and federal laws and judicial decisions. But, if any provision or provisions, or if any portion of any provision or provisions of this Note is found by a court of law to be in violation of any applicable tribal, local, state or federal ordinance, statue, law, administrative or judicial decision, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that the portion, provision or provisions shall be given force to the fullest possible extent that it or they are legal, valid and enforceable, that the remainder of this Note shall be construed as if the illegal, invalid, unlawful, void, or unenforceable portion, provision, or provisions were not contained herein, and that the rights, obligations, and interest of the Borrower and Lender hereof under the remainder of the Note shall continue in full force and effect.

11. **No Waiver or Release**. No delay or omission by Lender in exercising any right, power or remedy hereunder, and no indulgence given to Borrower, with respect to any term, condition or provision set forth herein or therein, shall impair any right, power or remedy of Lender under this Agreement, or be construed as a waiver by Lender of, or acquiescence in, any Event of Default. Likewise, no such delay, omission or indulgence by Lender shall be construed as a variation or waiver of any of the terms, conditions or provisions of this Agreement. Any actual waiver by Lender of any Event of Default expressed in writing shall not be a waiver of any other prior or subsequent Event of Default or of the same Event of Default after notice to Borrower demanding strict performance.

12. **Waivers**. Borrower hereby waives to the fullest extent permitted by law, except as otherwise provided in this Note, demand, presentment for payment, notice of dishonor, protest, and notice of protest and diligence in collection or bringing suit and agrees that the Lender may accept partial payment, or release or exchange security or collateral, without discharging or

releasing any unreleased collateral or the obligations evidenced hereby. Borrower further waives any and all rights of exemption, both as to personal and real property, under the constitution or laws of the United States and any other applicable law.

13. **Miscellaneous**. As used herein, the terms "Borrower" and "Lender" shall be deemed to include their respective successors, legal representatives and permitted assigns, whether by voluntary action of the parties or by operation of law. This Agreement shall be binding upon the Borrower and its respective successors, legal representatives and permitted assigns, except that the Borrower may not assign or transfer its rights without prior written consent of the Lender. This Agreement shall inure to the benefit of the Lender and unless otherwise expressly provided in a particular provision hereof, all subsequent successors and assigns; Lender may sell, assign, or transfer its interest herein to a third party, provided that (A)(i) Borrower approves such third-party, (ii) such approval may not be unreasonably withheld, (iii), if no disapproval is provided within ten (10) business days of a request, approval shall be deemed to have been given, and (iv) any existing Lender with respect to the Notes shall not require such approval, and (B) a Lender must first offer to sell, assign, or transfer his or her interest in this Note to an existing Lender with respect to the Notes, on the same terms as another party is willing to contractually agree to for the assignment. This Agreement is given under the seal of all parties hereto, and it is intended that this Agreement is and shall constitute and have the effect of a sealed instrument according to law.

14. **Notices**. Any notices, consents, waivers or other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been delivered (i) upon receipt, when delivered personally; (ii) upon receipt, when sent by electronic communications (provided that confirmation of transmission is mechanically or electronically generated and kept on file by the sending party); or (iii) upon three business days after deposit with a nationally recognized overnight delivery service, in each case properly addressed to the party to receive the same. The address, electronic-mail, and facsimile numbers for such communications shall be:

If to Lender:

Attn: Buena Vista Rancheria of Me-Wuk Indians
Attn: CFO and/or Chief of Staff
4650 Coal Mine Road
Ione, CA 95640


If to Borrower:

Rhonda Morningstar Pope-Flores
4650 Coal Mine Road
Ione, CA 95640

15. **Governing Law**. This Note shall be governed by and construed in accordance with federal law; the laws of the State of California including the laws related to the Uniform Commercial Code adopted by the state, to the extent not inconsistent with tribal laws and federal law; and the laws of the Tribe without regard to the conflicts of law rule of the Tribe or State. Notwithstanding the foregoing, Article 9 of the Uniform Commercial Code of the jurisdiction where the personal property subject to the Security Agreement is located shall govern when applicable.

16. **Good Faith Efforts to Resolve Disputes**. Subject to the terms and provisions of this Note, any disagreement or Claim (defined below) between the Borrower and Lender as to the interpretation, enforcement or breach of this Agreement, or the parties' rights or obligations thereunder, shall be resolved whenever possible by meeting and conferring for the purpose of attempting in good faith to resolve the dispute. Either party may request such a meeting by giving notice to the other in writing. The notice provided for in this section shall specify a time and location in California (or other location that may be agreed upon by the parties) for the requested meeting, provided, however, that the requested meeting shall not take place upon less than five (5) business days' notice nor upon more than fifteen (15) business days' notice. Such notice shall go out all Lenders of the Notes, and the meeting shall be open for attendance by all Lenders of the Notes. If, however, the parties are unable in good faith to reach a decision that is satisfactory to both parties, then either party may require that the matter be submitted to binding arbitration in accordance with this Agreement.

17. **Binding Arbitration**. Any Claim (defined below) shall be settled by arbitration under the rules of commercial arbitration of the American Arbitration Association (the "***AAA***") and Title 9 of the U.S. Code, as modified by this section, and conducted at a location chosen by the Lender in California. Any party may, by written notice to the other party after such a dispute, claim or controversy has arisen hereunder, appoint one arbitrator. The other party shall, by written notice, within twenty (20) days after the receipt of such notice by the first party, appoint a second arbitrator, and in default of such appointment the first arbitrator appointed shall be the sole arbitrator. When two (2) arbitrators have been appointed as hereinabove provided, they shall, if possible, agree on a third arbitrator who shall be appointed by written notice signed by both of them within thirty (30) days thereafter with a copy mailed to each party hereto within ten (10) days after such appointment; provided that if the two arbitrators cannot agree upon a third, they shall apply to the AAA for such appointment whose decision shall be final. No arbitrator shall be related to or affiliated with, or shall have represented in a legal capacity, any party hereto. The arbitrators shall apply the governing law specified in Section 15, and shall follow such rules of discovery and evidence as the United States District Court for the State of California would apply. Within sixty (60) days of the end of the arbitration proceeding, and after receiving evidence and hearing witnesses, if any, the arbitrators shall render their award, accompanied by findings of fact and a statement of reasons for the decision. The arbitrators shall have the authority to award in connection with a Claim any remedy or relief that a court of competent jurisdiction could order or grant, including, without limitation, equitable remedies, specific performance of any obligation created under this Note, and the issuance of an injunction. The award of the majority of the arbitrators shall be conclusive and binding upon the parties. Any award rendered therein may be entered in and/or enforced in Tribal Court of the Tribe, or if such court shall not have jurisdiction or shall otherwise fail to timely act, in any court of competent jurisdiction. Judgment on any final

arbitration award may be entered in any court of competent jurisdiction. Any review of the arbitration decision and award shall be limited to enforcement of the decision and award and the findings of the arbitrator(s) shall not be re-litigated. The parties further acknowledge and agree that any party may apply to the Tribal Court of the Tribe in the first instance and, after seeking relief from such Tribal Court, to any court of competent jurisdiction, and seek injunctive relief so as to maintain the status quo until such time as the arbitration award is rendered or the controversy is otherwise resolved. Each of the parties hereby agrees that this arbitration provision is valid and enforceable and therefore waives any defense or assertion to the contrary.

18. **Limited Waiver of Sovereign Immunity**. For purposes of permitting arbitration pursuant to Section 17 above, the Lender, by this Note, expressly agrees to and does hereby irrevocably waive its sovereign immunity, and all defenses based thereon, with respect to any dispute or claim that is directly or indirectly related to this Note, whether arising under law or in equity, whether arising as a matter of contract or tort, and as to jurisdiction and liability (each a "*Claim*") between the parties or any successor or assign of the parties, and for costs, including attorneys' fees, incident to any of the above Claims, and Borrower hereby consents to such arbitration. Borrower hereby expressly and irrevocably waives any claims or defenses it may have regarding the application of the doctrines of exhaustion of tribal court remedies, abstention, and comity, and all other rights of the Borrower that might otherwise require that a Claim be heard in tribal court. Nothing in this limited waiver of sovereign immunity shall be construed to confer any rights on any third party, except to any successor or assign of the Lender. Lender will undertake all actions as may be necessary or appropriate to ensure that the limited waiver of sovereign immunity granted in favor of Borrower is duly approved by the governing body of the Lender and shall remain in full force and effect at all times.

19. **Jury Waiver**. The Borrower and the Lender (by their acceptance hereof) hereby voluntarily, knowingly, irrevocably and unconditionally waive any right to have a jury participate in resolving any dispute (whether based upon contract, tort or otherwise) between or among borrower and lender arising out of or in any way related to this note or any of the other transaction documents, the transactions contemplated herein or therein or any relationship between Borrower and Lender. This provision is a material inducement to lender to provide the financing described herein or in the other transaction documents.

20. **Modification**. No promise, representation, warranty or agreement made subsequent to the execution and delivery of this Note by either party hereto, and no revocation, partial or otherwise, or change, amendment or addition to, or alteration or other modification of, this Note shall be valid unless the same shall be in writing signed by each Lender affected by such modification.

21. **Time is Material**. Time is hereby declared to be of the essence of this Note and of every part hereof, and the time and schedule requirements set forth herein are material terms of this Note.

22. **No Strict Construction**. The language used in this Note will be deemed to be the language chosen by the parties to this Note to express their mutual intent, and no rule of strict construction will be applied against any party.

**23.**     **Further Assurances**. Each party to this Note will execute all documents and take such other actions as the other party may reasonably request in order to consummate the transactions provided for in this Note and to accomplish the purposes of this Note.

IN WITNESS WHEREOF, Borrower has caused this Note to be executed, sealed and delivered as of the date first set forth above, although actually executed on the date or dates reflected below.

**BORROWER**:

Rhonda Morningstar Pope-Flores

_____
(sign)
_____
(date)

Amortization Schedule