UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUENA VISTA RANCHERIA OF ME-WUK INDIANS, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>RHONDA MORNINGSTAR POPE FLORES, PATI GONSALVES, RON PIÑA, LITTLE BIG TIME CHILD DEVELOPMENT CENTER, AND GRAND PRINCE ODEUM LLC,<br><br>Defendants. | No. 2:24-cv-01853-DC-JDP<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND<br><br>(Doc. No. 23) |

    This matter is before the court on Defendants' motion to dismiss Plaintiff's complaint. (Doc. No. 1.) On September 13, 2024, Defendants filed the pending motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. No. 23.) On October 4, 2024, Plaintiff filed an opposition to the pending motion. (Doc. No. 28.) On October 15, 2024, Defendants replied. (Doc. No. 32.) Pursuant to Local Rule 230(g), the pending motion was taken under submission after all hearing dates and prior deadlines were vacated when the case was reassigned. (Doc. No. 31.) For the reasons stated below, the court will grant Defendants' motion to dismiss.

/////

## BACKGROUND

On July 2, 2024, the Buena Vista Rancheria of Me-Wuk Indians ("Tribe" or "Plaintiff") filed a complaint alleging that Rhonda Morningstar Pope Flores, Pati Gonsalves, Ron Pina, Little Big Time Child Development Center ("LBT"), and Grand Prince Odeum LLC ("GP Odeum") (collectively, "Defendants") developed a scheme to misappropriate Tribal government funds and real property for Defendants' own benefit. (Doc. No. 1 at ¶ 5.) Plaintiff is a federally recognized sovereign Indian tribe governed by a Tribal Council. (*Id.* at ¶ 8.) Defendant Flores served as Chairwoman of the Tribe's Tribal Council from approximately 2004 until March 2024. (*Id.* at ¶ 5.) Defendant LBT is a non-profit preschool where Defendants Flores, Gonsalves, and Pina serve as the current Board of Directors for LBT. (*Id.* at ¶¶ 39, 41.) Defendant GP Odeum is a private building and an event space that was purchased by Defendant Flores in December 2020. (*Id.* at ¶¶ 23, 24.)

Plaintiff alleges two main schemes: one related to GP Odeum and one related to LBT. The first scheme related to GP Odeum ("GP Odeum scheme") began in 2020. In December 2020, Defendant Flores purchased a building and event space located at 210 Main Street in Winters, California. (*Id.* at ¶ 23.) Defendant Flores obtained a loan from the Tribe to purchase the building. (*Id.*) That same year, GP Odeum, named in honor of the musician Prince, was established with Defendant Flores as the manager and agent. (*Id*. ¶ 24.) GP Odeum's purpose was to own the real property and manage the event business. (*Id*.) The Tribe is not affiliated with GP Odeum. (*Id*.) After running into permitting issues with the GP Odeum building, Defendant Flores hired a law firm to assist with obtaining a permit. (*Id.* at ¶¶ 26.) Plaintiff alleges that legal fees associated with the permitting issues were sent to the Tribe whereafter Defendant Flores used her authority as Tribal Chairwoman to direct staff to use Tribal funds to cover over $250,000 in legal fees. (*Id.* at ¶¶ 26-30.) However, these legal services were never approved by the Tribal Council. (*Id.* at ¶ 32.) Plaintiff also alleges that various other Tribal funds and assets were diverted for GP Odeum related expenses. For example, Defendant Flores used her authority as Tribal Chairwoman to use the Tribe's funds to pay for an insurance policy to insure her personal Prince memorabilia against loss. (*Id.* at ¶ 35.) The Tribe paid a total of $139,592 in premiums for this policy between 2016

1   through 2023. (*Id.* at ¶ 38.) The use of Tribal funds to insure Defendant Flores's memorabilia was
2   not approved by the Tribal Council. (*Id.*)

3         Plaintiff also alleges that Defendants Flores, Gonsalves, and Pina misappropriated the
4   Tribe's real property through a second scheme related to LBT ("LBT scheme"). The Tribe has
5   allowed LBT to operate its preschool out of a house owned by the Tribe called the "Victorian
6   House" located in Sacramento. (*Id.* at ¶ 40.) At all relevant times, the Tribe funded the operations
7   of the preschool and paid for LBT's insurance, operating costs, teaching, and staff salaries using
8   Tribal funds. (*Id.* at ¶ 41.) Plaintiff alleges that Defendant Flores at times used the Victorian
9   House as her personal residence and event space by using it to store her Prince memorabilia and
10  host her annual Prince-themed event, "Princeology," in 2017, 2019, 2023, and 2024. (*Id.* at ¶ 42.)
11  In April 2024, the Tribal Council decided to cease funding LBT, effective June 5, 2024, and sell
12  the Victorian House. (*Id.* at ¶ 43.)

13        Following this decision, Plaintiff alleges that Defendant Flores caused a parent of a child
14  enrolled at LBT to contact representatives of Cesars Entertainment – a critical business partner of
15  the Tribe's casino – to persuade the Tribe to change its mind about funding LBT. (*Id.* at ¶ 45.)
16  That same day, Defendant Pina contacted the Tribe's Chief of Staff and alluded to the e-mail to
17  Caesars while referencing conversations he had with Defendant Flores concerning the same. (*Id.*
18  at ¶ 46.) Plaintiff also alleges that to protest the ending of funding for LBT, Defendant Flores
19  began "squatting" at the Victorian House and posting messages to social media about Tribal
20  employees. (*Id.* at ¶¶ 47-49.) According to Plaintiff, Defendant Flores has since retained a lawyer
21  and remains squatting in the house, claiming that she is a lawful resident of the Victorian House.
22  (*Id.* at ¶¶ 51-52.)

23        Since funding ceased on June 5, 2024, the Tribe alleges that "Defendants have directly or
24  indirectly caused the submission of unauthorized and unapproved charges related to teacher and
25  staff salaries for LBT." (*Id.* at ¶ 54.) These actions have included submitting a timesheet seeking
26  payment for hours worked on June 10, 11, and 12, 2024 and an e-mail invoice seeking $1,345.36,
27  which the Tribe has not paid (*Id.* at ¶¶ 55, 57) as well as two electronic charges on the Tribe's
28  American Express credit card for staff salaries from June 10–15, 2024, in the amounts of $898.52

and $1,345.36. (*Id.* at ¶¶ 55, 58.) These charges were not authorized by the Tribe. (*Id.*) Defendants have continued to contact Tribal employees and their contractors. (*Id.* at ¶¶ 60-63.) As a result of these communications, the Tribal Council has relocated its office to an undisclosed location and provides armed security for any employees who visit the old office. (*Id.* at ¶ 64.)

Based on these allegations, Plaintiff brings the following five claims in its complaint: (i) civil racketeering under 18 U.S.C. §§ 1961, *et seq*. ("RICO") against all Defendants; (ii) conspiracy to commit civil racketeering in violation of 18 U.S.C. § 1962(d) against all Defendants; (iii) civil conspiracy under California law against Defendants Flores, Gonsalves, and Pina; (iv) conversion against Defendant Flores; and (v) unjust enrichment against Defendants Flores, GP Odeum, and LBT. (Doc. No. 1.)

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). In determining whether a complaint states a claim upon which relief can be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Under Federal Rule of Civil Procedure Rule 8(a), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must allege enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility

4

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). If a claim is dismissed for failure to comply with these requirements, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ANALYSIS

Defendants contend that Plaintiff's complaint should be dismissed in its entirety because Plaintiff fails to meet both the general and specific pleading standards required to state a RICO claim under 18 U.S.C. § 1962(c). (Doc. No. 23 at 5–16.) For similar reasons, Defendants also contend that Plaintiff cannot state a claim for conspiracy to violate RICO under 18 U.S.C. § 1962(d). (Doc. No. 23 at 16–20.) Defendants also move to dismiss Plaintiff's state law claims for lack of jurisdiction and to stay parts of Plaintiff's complaint due to existence of an arbitration provision. (Doc. No. 23 at 20–24.) The court addresses each argument in turn.

**A.     RICO under 18 U.S.C. § 1962(c) (Count I)**

The civil RICO statute allows individuals to file suit and recover treble damages against individuals who, through a "pattern of racketeering activity," acquire an interest in, or conduct the business of, an enterprise engaged in interstate or foreign commerce. 18 U.S.C. §§ 1962(b), 1962(c), 1964(d). Specifically, 18 U.S.C. § 1962(c) prohibits conducting the affairs of an enterprise engaged in interstate or foreign commerce through a pattern of racketeering activities. To plead a violation of RICO under Section 1962(c), a plaintiff must sufficiently plead five general elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's business or property. *Grimmet v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c)).

    1.  <u>Conduct and existence of a RICO enterprise</u>

Defendants challenge the first two prongs of the RICO claim by arguing that Plaintiff has failed to plausibly allege the conduct and existence of a RICO enterprise. (Doc. No. 23 at 6-9.) The RICO statute defines "enterprise" to include "any individual, partnership, corporation,

5

1  association, or other legal entity, and any union or group of individuals associated in fact although
2  not a legal entity." 18 U.S.C. § 1961(4). As evident from the statutory text, the definition of
3  "enterprise" is expansive because in addition to groups of individuals, even single "individual[s]"
4  or "corporation[s]" are enterprises under RICO. Thus, each of the Defendants named in the
5  complaint meets the definition of an "enterprise" because they are either individuals or
6  corporations. Flores, Gonsalves, and Pina are individuals, and GP Odeum and LBT are
7  corporations or legal entities. (Doc. No. 1 at ¶ 5.)

8  However, Defendants challenge whether Plaintiff has properly pled that Defendants also
9  formed an "association-in-fact" for the purpose of depriving the Tribe of its property (Doc. No.
10 23 at 6.) By the statute's own terms, the association-in-fact category of RICO does not include
11 legal entities and must be made up of natural persons only. 18 U.S.C. § 1961(4) (stating a "group
12 of individuals associated in fact although not a legal entity"). Plaintiff and Defendants both agree
13 that under Supreme Court precedent, Plaintiff must allege three basic features of an enterprise: "a
14 purpose, relationships among those associated with the enterprise, and longevity sufficient to
15 permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938,
16 946 (2009). As Defendants persuasively argue in their motion, the first scheme related to GP
17 Odeum concerns allegations only regarding GP Odeum (a legal entity) and Defendant Flores—
18 there are no allegations of any actions taken by Pina, Gonsalves, or the aggregated "Defendants"
19 until May 2024. (Doc. Nos. 23 at 8; 1 at ¶¶ 5, 46, 54, 60.) While Plaintiff seeks to conflate the
20 two schemes, the allegations related to the GP Odeum scheme (Doc. No. 1 at ¶¶ 23-38) cannot
21 constitute an association-in-fact because it does not include allegations regarding Pina or
22 Gonsalves and thereby is not a "group of persons associated together for a common purpose of
23 engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

24 In contrast, the LBT scheme does contain sufficient facts to plead existence of an
25 association-in-fact enterprise. Plaintiff alleges that Defendants Flores, Gonsalves, and Pina had a
26 "relationship" because they served on the Board of Directors of LBT together and worked
27 together by sending e-mails for the "purpose" of pressuring the Tribe into continuing to provide
28 funding for LBT. *Boyle*, 556 U.S. at 946; (Doc. No. 1 at ¶¶ 39, 46, 60.) Thus, contrary to what

1 Defendants argue in their reply (Doc. No. 32 at 2), Defendants Flores, Gonsalves, Pina, and LBT
2 can be said to have "participate[d] in the operation or management of the enterprise itself."
3 *Gilbert v. MoneyMutual, LLC*, 2018 WL 8186605, at *10 (N.D. Cal. 2018) (quoting *Reves v.*
4 *Ernst & Young*, 507 U.S. 178, 185 (1993)). As for "longevity" necessary to pursue the
5 enterprise's purpose, Defendants are correct that Plaintiff does not allege a specific time period
6 explaining when the association-in-fact operated. (Doc. No. 1 at ¶¶ 45, 46.) Nevertheless, it is
7 clear from the complaint that efforts to prevent LBT's closure began at least on May 3, 2024,
8 when Defendants Flores and Pina are alleged to have first engaged in efforts to influence the
9 Tribe to change its mind about defunding LBT and that these efforts continued until the date the
10 complaint was filed. (Doc. No. 1 at ¶¶ 45, 46, 59.) Given that the complaint sufficiently alleges
11 that Defendants Flores, Gonzalves, and Pina used their positions as Directors of LBT to "obstruct
12 the Tribe's ability to control the disposition of its funds and real property," Plaintiff has plausibly
13 alleged an association-in-fact regarding the LBT scheme. (Doc. No. 1 at ¶ 65.)

14        2.      <u>Pattern of Racketeering Activity</u>

15 Defendants also challenge the third and fourth element of the RICO claim, arguing that
16 Plaintiff does not properly plead the requisite predicate acts necessary to establish a "pattern of
17 racketeering activity" for any of the Defendants. 18 U.S.C. § 1961(1). Specifically, Defendants
18 contend that the racketeering predicates do not satisfy the specificity or statutory elements
19 required (Doc. No. 23 at 9–15) and that the alleged predicate acts are not related enough to
20 establish continuity (Doc. No. 23 at 15).

21        *a.*      *Racketeering Activity*

22 The RICO statute defines "racketeering activity" as any act indictable under several
23 provisions of Title 18 of the United States Code, including the predicate acts of wire fraud under
24 § 1343, mail fraud under § 1341, and extortion under § 1951. *See* 18 U.S.C. § 1961(1). Here,
25 Plaintiff accuses Defendants of committing three predicate acts: mail fraud, wire fraud, and
26 extortion. (Doc. No. 1 at ¶ 72.) Defendants argue that Plaintiff has failed to plead the alleged
27 predicate acts of mail and wire fraud with the required specificity under Federal Rule of Civil
28 Procedure 9(b). (Doc. No. 23 at 9-15.) Defendants also asserts that Plaintiff has failed to allege

the required statutory elements of extortion. (*Id.*)

                i.        Mail and Wire Fraud

To make out a claim for the predicate acts of wire or mail fraud, plaintiffs must allege: (i) a scheme or artifice devised with (ii) the specific intent to defraud and (iii) use of the United States mail or interstate telephone wires in furtherance thereof. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 782 (9th Cir. 2002). Where a plaintiff alleges racketeering by means of mail and wire fraud, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to those predicate acts. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004); *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989). The fraud allegations must be "specific enough to give defendants notice of the particular misconduct," thereby enabling them to "defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Therefore, allegations of fraud must be "accompanied by the who, what, when, where, and how of the misconduct charged." *Id*. Plaintiff must "detail with particularity the time, place, and manner of each act of fraud, *plus the role of each defendant in each scheme*." *Lancaster Cmty. Hosp.*, 940 F.2d at 405 (emphasis added); *see also Schreiber Dist. Co. v. Serv-Wel Furniture Co., Inc.,* 806 F.2d 1393, 1401 (9th Cir. 1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.").

Defendants assert that Plaintiff makes incomplete and vague statements regarding the alleged mail and wire fraud, which do not satisfy the heightened pleading requirements of Rule 9(b). (Doc. No. 23 at 11). The court disagrees with Defendants' characterization of the predicate offenses as to the claims against Defendants Flores and GP Odeum. For example, Plaintiff describes that Defendant Flores created the "false impression" that the law firm was a 'vendor' of the Tribe" to direct Tribal staff to use the Tribe's funds to pay the law firm's bills for assisting in GP Odeum's permitting. (Doc. No. 1 at ¶¶ 30, 31.) At least three legal invoices were sent via the U.S. Mail to the Tribal Accounting Office received on or about March 30, 2022, September 30, 2022, and June 1, 2023. (Doc. No. 1 at ¶¶ 28–30.) Additionally, Defendant Flores "falsely

1  represented that the premiums" paid for her "special fine art insurance policy" were for the
2  benefit of the Tribe and were part of the Tribe's overall insurance needs and that these payments
3  were "paid by check using the mails" and drawn on the Tribe's bank account. (Doc. No. 1 at ¶¶
4  36, 37.) These acts were allegedly done in furtherance of Defendant Flores's scheme to
5  misappropriate the Tribe's money. (Doc. No. 1 at ¶ 38.)
6        Thus, Plaintiff has alleged with specificity the details surrounding the GP Odeum scheme
7  and stated the time, place, and manner for at least three incidents of mail fraud committed by
8  Defendants Flores and GP Odeum with regard to the legal bills and at least one incident each of
9  mail and wire fraud by Defendant Flores with regard to the insurance policy premiums. The
10 multiple incidents of these predicate offenses fulfill the "pattern of racketeering" requirement.
11       Notwithstanding the allegations against Defendant Flores and GP Odeum, the court agrees
12 with Defendants that the complaint fails to specify with particularity how Defendants Gonsalves,
13 Pina, and LBT participated in any mail or wire fraud. (Doc. No. 23 at 11.) As discussed
14 previously, Defendants point out there are no allegations of any actions taken by Gonsalves, Pina,
15 LBT, or the aggregated "Defendants" until May 2024. (Doc. Nos. 23 at 8; 1 at ¶¶ 46, 54, 60.) The
16 allegations that do pertain to Gonsalves and Pina only concern e-mail communications expressing
17 "concern" and "worries" over the closure of the LBT. (Doc. No. 1 at ¶¶ 46, 60.) All other
18 allegations in the LBT scheme name only Defendant Flores or state "a string of vague,
19 generalized allegations attributed to 'Defendants' generally." (Doc. Nos. 23 at 11; 1 at ¶¶ 54-58.)
20 This type of aggregation of defendants is exactly what Rule 9 prohibits. *Swartz v. KPMG LLP*,
21 476 F.3d 756, 764 (9th Cir. 2007); *In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
22 *Sales Practices & Prod. Liab. Litig.*, 826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011) ("A plaintiff
23 may not simply lump together multiple defendants without specifying the role of each defendant
24 in the fraud.") Without specifying the identity of the party who sent the invoices or caused the
25 credit card charges, Plaintiff does not satisfy Rule 9(b)'s requirements for fraud. *Schreiber,* 806
26 F.2d at 1401. It follows that Plaintiff has failed to sufficiently plead the predicate acts of mail or
27 wire fraud for Defendants Gonsalves, Pina, and LBT.
28 /////

ii.   Extortion

Unlike fraud, the predicate act of extortion does not require the heightened pleading standards of Rule 9(b), but must still have sufficient factual content to state a claim. *Iqbal*, 556 U.S. at 678. Plaintiff has pled extortion under the Hobbs Act, which the statute defines as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2); (Doc. No. 1 at ¶¶ 5, 72.) When assessing allegations of extortion, courts must differentiate between "legitimate use of economic fear—hard bargaining—and wrongful uses of such fear—extortion." *United Bhd. of Carpenters and Joiners of Am. v. Bldg. and Constr. Trades Dept.*, 770 F.3d 834, 838 (9th Cir. 2014). "Warnings and notices" of actions by a defendant who may lawfully take those actions do not constitute extortion. *Rothman v. Vedder Park Mgmt.*, 912 F.2d 315, 318 (9th Cir. 1990). Stated differently, courts recognize a line between legitimate uses of fear and wrongful uses of fear.

Defendants argue in their motion and reply that the actions of Defendants Flores, Gonsalves, and Pina cannot be construed as constituting "actual or threatened force, violence, or fear" because their actions consist of lobbying attempts to keep LBT open. (Doc. Nos. 23 at 11; 32 at 5.) Plaintiff responds in its opposition that the complaint alleges at least three attempts at extortion. (Doc. No. 28 at 12.) The first attempt includes Defendants Flores and Pina causing emails to be sent to Caesars Entertainment. (Doc. Nos. 28 at 12; 1 at ¶ 45.) The second attempt includes Defendant Gonsalves e-mailing the Tribe's Chairwoman and saying she was "worried for the Chairwoman and her family." (Doc. Nos. 28 at 12; 1 at ¶ 60.) The final attempt includes when Defendant Flores shook her fist at a Tribal employee and said "God is watching you and will punish you for working with the devil," and when she sent a message to the Tribe's contractor stating that "people would be angry" if he painted over her Prince mural. (Doc. Nos. 28 at 12; 1 at ¶¶ 62-64.) Even reading the facts in the light most favorable to the Plaintiff, these alleged actions and communications by Defendants Flores, Gonsalves, and Pina cannot be read to constitute "actual or threatened force, violence, or fear" since the e-mails appear to express mere concern, and Plaintiff does not allege any employee or individual was frightened or scared by

10

these e-mails. Similarly, Defendant Flores's fist shaking with spiritual references and message that "people would be angry" cannot be considered actual or threatened force because the comments do not suggest immediate or tangible future harm. Finally, because Defendants Flores, Gonsalves, and Pina initially occupied the Victorian House with the Tribe's permission and thereafter were "squatting," the complaint indicates that Defendants have overstayed their welcome, not that they have "obtain[ed]" property through intimidation or fear. (Doc. No. 1 at ¶¶ 41, 47, 50.). Thus, the court agrees with Defendants that Plaintiff has failed to adequately plead the predicate offense of extortion.

    b.   Pattern

In addition to alleging predicate acts, Plaintiff must also set forth a "pattern of racketeering activity," which "requires at least two acts of racketeering activity . . . ." 18 U.S.C. § 1961(5); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (noting that, while at least two acts of racketeering activity are required under RICO to establish a pattern, the pleading of two such acts is not necessarily sufficient to do so). Where RICO claims under § 1962(c) are asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant. *See Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1177 (E.D. Cal. 2017) (citing cases).

In addition to the two acts of racketeering, plaintiffs must also allege (i) that the racketeering predicates are related, and (ii) that they amount to or pose a threat of continued criminal activity. *See Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)). The relatedness requirement is satisfied if the plaintiffs allege criminal acts with the same or similar purposes, results, participants, victims, or methods of commission, or acts that are otherwise interrelated by distinguishing characteristics and are not isolated events. *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000). The continuity requirement is satisfied if plaintiffs allege "either a series of related predicates extending over a substantial period of time, i.e., closed-ended continuity, or past conduct that by its nature projects into the future with a threat of repetition, i.e., open-ended continuity." *Id.* at 750; *see also H.J., Inc.*, 492 U.S. at 241-42.

11

As discussed above, the complaint does not sufficiently allege any predicate acts against Defendants Pina, Gonsalves, and LBT, therefore, Plaintiff has failed to demonstrate that these three defendants have engaged in a "pattern" of racketeering activity under RICO. While Defendant Flores and GP Odeum are properly alleged to have engaged in at least two predicate acts, these acts still must meet the relatedness and continuity requirements required to create a "pattern" under the RICO statute. *See Howard*, 208 F.3d at 749–50. Defendants argue that the actions taken relating to GP Odeum's legal fees in 2022–2023 (Doc. No. 1 at ¶¶ 27-32) and the actions in May and June 2024 relating to LBT (Doc. No. 1 at ¶¶ 44-60) cannot be linked because they are not related. (Doc. No. 23 at 15.) But as Plaintiff points out in its opposition, these actions, in addition to the insurance policy premiums paid from 2016-2023 (Doc. No. 1 at ¶¶ 33–38), had the "same or similar purpose[]" of misappropriating the Tribe's money for Defendant Flores's personal use and all involved the Tribe as the "victim." (Doc. No. 28 at 13.) Additionally, despite Defendants' arguments to the contrary, Plaintiff has sufficiently alleged the continuity requirement for Defendant Flores and GP Odeum because the complaint demonstrates "closed-ended continuity" since their actions are alleged to have taken place "over several years" rather than "weeks or months." In sum, Plaintiff has sufficiently pled that Defendants Flores and GP Odeum have shown a "pattern" necessary to state a RICO claim.

3. <u>Interstate nexus</u>

Most significantly, Defendants highlight that Plaintiff has not alleged that the individuals named in the complaint "engaged in, or ha[d] an effect on, interstate commerce," a core element of a RICO claim. *Musick v. Burke*, 913 F.2d 1390, 1398-99 (9th Cir. 1990). In a footnote in their opposition, Plaintiff cursorily asks the court to take judicial notice of facts not alleged in their complaint: that Caesars Entertainment is headquartered in Reno, Nevada and that the insurance company, The Princeton Excess and Surplus Lines Insurance Company, is located in New Jersey. (Doc. No. 28 at 10 n. 4.) However, Plaintiff has not filed a request for judicial notice nor does it provide any evidence or information for the court to make a determination of an interstate nexus. Plaintiff merely describes interstate commerce only when reciting the conclusory statutory language of the RICO statute but offers no explanation as to how that statutory language applies

to this case. (Doc. No. 1 at ¶¶ 70, 72.) Taking the complaint at face value, Plaintiff does not allege facts establishing an interstate nexus and therefore fails to state a claim under the civil RICO statute.

Accordingly, Defendants' motion to dismiss Plaintiff's civil racketeering claim will be granted.

**B.     RICO conspiracy under 18 U.S.C. § 1962(d) (Count II)**

The civil RICO statue also creates a private cause of action against individuals who conspire to engage in prohibited racketeering activity. 18 U.S.C. § 1962(d). To plead a violation of § 1962(d), a plaintiff must allege "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard*, 208 F.3d at 751. However, a plaintiff "cannot claim that a conspiracy to violate RICO exist[s] if they do not adequately plead a substantive violation of RICO." *Id.* The court has already analyzed and agrees with Defendants' arguments that Plaintiff's § 1962(c) claim is not sufficiently alleged. Accordingly, the court likewise finds Plaintiff has inadequately plead a RICO conspiracy claim under 18 U.S.C. § 1962(d). Thus, Defendants' motion to dismiss Plaintiff's RICO conspiracy claim will also be granted.

**C.     Remaining State Law Claims (Counts III-V)**

Plaintiff brings three other state law causes of action for civil conspiracy, conversion, and unjust enrichment. Although federal district courts have supplemental jurisdiction over state law claims, it may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the court has determined that Plaintiff has failed to state a claim for relief under the civil RICO statute (Count I and Count II), the only basis for subject matter jurisdiction under federal question, the court finds dismissal of the remaining state claims to be appropriate. Thus, the court declines to exercise jurisdiction over Plaintiff's remaining claims.

**D.     Arbitration under the Federal Arbitration Act**

Defendants argued in the alternative that certain of Plaintiff's claims are subject to arbitration. Defendants request that portions of Count I and all of Count V be stayed because

13

claims arising from the legal fees associated with GP Odeum are subject to an arbitration clause. (Doc. No. 23 at 22–23.) Defendants argue that the legal fees incurred to obtain GP Odeum's permit were added to the principal balance of a loan Defendant Flores received from the Tribe. (Doc. No. 1 at ¶¶ 26–32.) This loan is governed by a promissory note that includes an arbitration provision in which the parties agreed to arbitrate "any dispute or claim that is directly or indirectly related to" the promissory note. (Doc. Nos. 23-1, 23-2.) Plaintiff disputes whether the amount of the legal fees was added to the principal loan amount and whether the parties are subject to any arbitration agreement. (Doc. No. 28 at 3.)

Although the court is free to consider facts outside the complaint when examining whether "a suit or proceeding is referable to arbitration" under "an agreement in writing for such arbitration," when there exists a dispute over enforceability or existence of an arbitration clause, the Federal Arbitration Act is clear that the party must first submit a motion to compel and that an evidentiary hearing must be held to determine the validity of the arbitration clause. *See* 9 U.S.C. §§ 3, 4. A party seeking to invoke an arbitration agreement must "petition any United States district court which, save for such agreement, would have jurisdiction [to hear the matter], for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Although Defendants ask this court to decide the issue of enforceability of the arbitration clause through their motion to dismiss, they have not cited any authority for bypassing the filing of a noticed motion to compel arbitration and holding an evidentiary hearing as appropriate to resolve disputed issues of fact regarding the validity or existence of the arbitration clause. *See Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1246 (N.D. Cal. 2014). Therefore, the court declines to rule on the arbitrability of the legal fees associated with GP Odeum that implicate Counts I and V. Should Defendants wish to compel arbitration, they may file a properly noticed motion for the court's consideration.

**E.     Leave to Amend**

Plaintiff requests leave to amend its complaint. (Doc. No. 28 at 3.) The court recognizes that leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a).

The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). Because alleging additional facts such as specifying which Defendants committed which acts of fraud and where various parties are located could cure the pleading deficiencies in the complaint, the court grants Plaintiff leave to amend.

## CONCLUSION

For the reasons explained above:

1. Defendants' motion to dismiss (Doc. No. 23) is GRANTED, with leave to amend;

2. Within twenty-one (21) days of the date of entry of this order, Plaintiff shall file a first amended complaint, or alternatively, file a notice of its intent not to file a first amended complaint; and

3. Plaintiff is cautioned that failure to comply with this order may result in an order dismissing this case.

IT IS SO ORDERED.

Dated: __August 27, 2025__                    _____
                                              Dena Coggins
                                              United States District Judge